## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14 - |
| v. | : | Date Filed: July 29, 2014 |
| CHAKA FATTAH, JR. | : | VIOLATIONS: |

**VIOLATIONS:**
18 U.S.C. § 1344 (bank fraud - 1 count)
18 U.S.C. § 1014 (false statements to obtain loans - 8 counts)
18 U.S.C. § 1014 (false statements to settle a loan - 1 count)
18 U.S.C. § 1001 (false statements concerning loans insured by the Small Business Administration - 3 counts)
26 U.S.C. § 7206(1) (filing false federal income tax returns - 4 counts)
26 U.S.C. §  7203 (failing to pay federal income tax - 1 count)
18 U.S.C. §  666(a)(1)(A) (theft from a program receiving federal funds - 1 count)
18 U.S.C. § 1343 (wire fraud – 4 counts)
18 U.S.C. § 2 (aiding and abetting)

## INDICTMENT

## INTRODUCTION

At times between 2005 and 2012, and relevant to this Indictment:

1.      Defendant CHAKA FATTAH, JR. was a resident of the Eastern District of Pennsylvania.   Defendant FATTAH portrayed himself as the owner/founder of a number of entrepreneurial business enterprises, including the following: 259 Strategies, LLC, ("259 Strategies") which FATTAH claimed provided educational consulting, diversity consulting & audit service, project management, technical assistance, community relations, and organizational development to a select group of clients; Chaka Fattah, Jr. & Associates, which FATTAH claimed to do research and consulting concerning development of computer centers; American Royalty,

1

which FATTAH claimed to be a concierge servicer for high net-worth clients; and Legal

Marketing Strategies, LLC, under which name FATTAH contracted to perform growth and

marketing plans for a law firm.   FATTAH also was employed by Real Estate Mogul Corporation,

for which he provided marketing services.

      2.      M.A. was a personal friend and associate of defendant CHAKA FATTAH, Jr.

      3.      Company 1 was a provider of alternative educational services to middle and high

school age youth in the Philadelphia area, in conjunction with the Philadelphia School District

(PSD).   In 2010, 2011, and 2012, Company 1 and PSD received benefits in excess of $10,000

from a Federal program.

      4.      Between approximately 2005 and 2012, defendant CHAKA FATTAH, Jr. engaged

in a course of conduct which included obtaining business lines of credit from the financial

institutions identified in this indictment, all of which are federally insured, through false

statements and fraud, improperly using the loan funds for his personal benefit rather than for

business expenses, making false statements to financial institutions and the United States

government to settle his unpaid debts, and filing false tax returns on the income he received.   As

set forth below, the scheme worked as follows:

      a.      FATTAH and M.A. submitted a series of false and fraudulent applications

for lines of credit from financial institutions in Philadelphia during 2005 to obtain lines of

credit for FATTAH's entities under false pretenses.   In order to persuade these banks to

provide loans, FATTAH caused the preparation of a false federal income tax return for

year 2004, which falsely claimed that 259 Strategies had gross income of $140,000 during

2004.   The return also falsely claimed that 259 Strategies had expenses of $132,400,

2

which lowered the taxable income on which taxes had to be paid, and    FATTAH paid the

$1,125 tax due on the fictitious return.    In fact, 259 Strategies had no earnings in 2004, and

FATTAH did not even register 259 Strategies with the Commonwealth of Pennsylvania

until 2005.

      b.     FATTAH used the funds from the business lines of credit primarily for

personal expenses, including car payments, food, restaurant and club expenses, utilities,

clothing, electronics, retail purchases, charitable donations, jewelry, entertainment, legal

fees, and personal credit card expenses, rather than working capital and other business

expenses as required by the loan agreements.

      c.     Having used the loan funds for personal expenses rather than business

expenses, defendant FATTAH defaulted on several lines of credit.    In order to settle those

debts and attempt to pay less than what he owed in 2010, FATTAH provided false income

and other information to two banks, to the United States Small Business Administration

which had insured those two bank loans, and to a Small Business Administration

investigator.    FATTAH claimed that during 2010 he earned approximately $2,500

monthly and that 259 Strategies had ceased operations, when, in fact, in 2009 he had begun

earning from $6,250 per month to $450,000 per year, or $37,500 monthly, as President of

259 Strategies and/or as owner of Legal Marketing Strategies, through contracts with

Company 1.

      d.     In order to maintain his substantial earnings from Company 1, FATTAH

defrauded the PSD by submitting false, inflated, and fictitious budget information to the

PSD on behalf of Company 1.

e.     FATTAH failed to file timely federal income tax returns for 2005 through 2008, and when he did file income tax returns for those years in late 2010, he failed to report all of his earned income on the returns.   FATTAH generally identified income on his federal tax returns only when the income information had already been reported to the Internal Revenue Service by others, and did not identify on his federal income tax returns income which had not been reported to the Internal Revenue Service.

f.     In 2011, FATTAH obtained another line of credit for 259 Strategies from a federally insured bank in Philadelphia, this time for $50,000.   Despite his agreement to use the loan proceeds for "working capital to support business operations," within days of the loan approval, FATTAH spent more than $32,500 of the loan proceeds for personal expenses, including $17,500 to pay gambling debts at Sugarhouse casino.   Later, after FATTAH had repaid some of the funds to the bank, FATTAH withdrew $20,000 in loan proceeds in cash and used $16,000 of that cash to pay down gambling debts at Harrah's casino.

## COUNT ONE

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. § 1014

1.     On or about June 22, 2005, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly made and caused to be made to Citizens Bank false statements for the purpose of influencing the actions of Citizens Bank upon a $26,000 business line of credit for defendant FATTAH, doing business as 259 Strategies.   FATTAH claimed, among other things, that 259

4

Strategies had $140,000 in sales in 2004, that he earned $35,000 in annual personal income, and that he intended to use the proceeds of the loan for working capital for his business.   FATTAH also submitted to the bank a copy of a false 2004 federal income tax return.   In fact, FATTAH knew that 259 Strategies had not had annual sales of $140,000 during 2004 and that the 2004 federal income tax return reflecting that income was false.   FATTAH knew that he was not earning $35,000 in personal income when he applied for the loan, and also knew that he would not use the proceeds of the line of credit for working capital for his business, as required under the terms of the loan, but instead would use the proceeds primarily to pay for personal expenses.

In violation of Title 18, United States Code, Section 1014.

<u>COUNT TWO</u>

**FALSE STATEMENTS TO OBTAIN A BANK LOAN**
**18 U.S.C. § 1014**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 and 4 of the Introduction are incorporated here.

2.      On or about July 1, 2005, in the Eastern District of Pennsylvania, defendant

**CHAKA FATTAH, JR.**

knowingly made and caused to be made to PNC Bank false statements for the purpose of

influencing the actions of PNC Bank upon a $15,000 revolving line of credit for defendant

FATTAH, doing business as 259 Strategies, which he claimed was engaged in the photographic

and management consulting business.   FATTAH claimed, among other things, that 259 Strategies

had annual sales of $140,000 during the past three years, and certified that he would utilize the line

of credit proceeds to conduct his business enterprise.   In fact, FATTAH knew that 259 Strategies

had not had annual sales of $140,000, and FATTAH knew that he would not use the proceeds of

the line of credit for working capital for his business, as required under the terms of the loan, but

instead would use the proceeds primarily to pay for personal expenses.

In violation of Title 18, United States Code, Section 1014.

## COUNT THREE

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. § 1014

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 and 4 of the Introduction are incorporated here.

2.    On or about November 1, 2005, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly made and caused to be made to Sun National Bank false statements for the purpose of

influencing the actions of Sun National Bank upon a $25,000 revolving line of credit for defendant

FATTAH, doing business as 259 Strategies, which he claimed was a management consulting

company.   FATTAH claimed, among other things, that 259 Strategies had $141,000 in sales

during the previous fiscal year, that he had an annual income of $30,000, and that he would use the

proceeds of the line of credit for working capital for his business.   In fact, FATTAH knew that

259 Strategies had not had annual sales of $141,000 during the previous fiscal year, FATTAH

knew that he did not have an annual income of $30,000, and FATTAH knew that he would not use

the proceeds of the line of credit for working capital for his business, as required by the terms of

the loan, but instead would use the proceeds primarily to pay for personal expenses.

In violation of Title 18, United States Code, Section 1014.

7

## COUNT FOUR

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. § 1014

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  Paragraphs 1 and 4 of the Introduction are incorporated here.

2.  On or about November 7, 2005, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly made and caused to be made to Bank of America false statements for the purpose of

influencing the actions of Bank of America upon a $10,000 business line of credit for defendant

FATTAH, doing business as 259 Strategies, which he claimed offered management consulting

services.   Defendant FATTAH claimed, among other things, that 259 Strategies had $140,000 in

gross annual sales, that it had zero business debt, and that he would use the proceeds of the line of

credit for working capital for his business.   In fact, FATTAH knew that 259 Strategies did not

have annual sales of $140,000, FATTAH knew that 259 Strategies had tens of thousands of dollars

in business debt, and FATTAH knew that he would not use the proceeds of the line of credit for

business related purposes, as required by the terms of the loan, but instead would use the proceeds

primarily to pay for personal expenses.

In violation of Title 18, United States Code, Section 1014.

8

## COUNT FIVE

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. §§ 1014 and 2.

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1, 2 and 4 of the Introduction are incorporated here.

2. On or about July 12, 2005, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly induced and procured M.A. to make and caused to be made to PNC Bank false

statements for the purpose of influencing the actions of PNC Bank upon a $15,000 revolving line

of credit to M.A, doing business as Chaka Fattah, Jr. Associates ("CFJA").   M.A. claimed, among

other things, that he was the owner and Chief Executive Officer of CFJA, that CFJA had $139,000

in sales, and that, and that he would use the proceeds of the line of credit for working capital for his

business.   In fact, defendant FATTAH knew that CFJA was not an existing business entity and

M.A. was not the owner and Chief Executive Officer, FATTAH knew that that CFJA had not had

sales of $139,000, and FATTAH knew that the proceeds of the line of credit would not be used for

working capital for the business, as required under the terms of the loan, but instead would be used

primarily to pay for personal expenses.

In violation of Title 18, United States Code, Sections 1014 and 2.

9

## COUNT SIX

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. §§ 1014 and 2.

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1, 2 and 4 of the Introduction are incorporated here.

2.    On or about July 26, 2005, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly induced and procured M.A. to make and caused to be made to Wachovia Bank false

statements for the purpose of influencing the actions of Wachovia Bank upon a $25,000 business

line of credit to Chaka Fattah, Jr. Associates ("CFJA").   M.A. claimed, among other things, that

he was the secretary and Chief Executive Officer of CFJA, and that he would use the proceeds of

the line of credit for commercial purposes.   In fact, defendant FATTAH knew that CFJA was not

an existing business entity and that M.A. was not the secretary and Chief Executive Officer, and

FATTAH knew that the proceeds of the line of credit would not be used for commercial purposes,

as required under the terms of the loan, but instead would be used primarily to pay for personal

expenses.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT SEVEN

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. §§ 1014 and 2.

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1, 2 and 4 of the Introduction are incorporated here.

2.     On or about August 8, 2005, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly induced and procured M.A. to make and caused to be made to Sun National Bank false

statements for the purpose of influencing the actions of Sun National Bank upon a $25,000

business line of credit to M.A., doing business as Chaka Fattah, Jr. Associates, ("CFJA") which

M.A. described as a management consulting business.   M.A. claimed, among other things, that he

was the Chief Executive Officer of CFJA, that CFJA has business sales of $140,000 in the

previous fiscal year, and that he would use the proceeds of the line of credit for working capital and

growth of the business.   In fact, defendant FATTAH knew that CFJA was not an existing business

entity, FATTAH knew that that CFJA had not had sales of $140,000 in the previous fiscal year,

and FATTAH knew that the proceeds of the line of credit would not be used for working capital

and growth of the business, as required under the terms of the loan, but instead would be used

primarily to pay for personal expenses.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT EIGHT

### FALSE STATMEMENTS CONCERING A LOAN INSURED BY THE SMALL BUSINESS ADMINISTRATION
### 18 U.S.C. § 1001

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 and 4 of the Introduction are incorporated here.

2. On or about March 5, 2010, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully and knowingly made and caused to be made, and used and caused to be used, in a matter

within the jurisdiction of a department or agency of the United States, that is, the U.S. Small

Business Administration ("SBA"), a false writing or document, knowing the same to contain

materially false, fictitious, and fraudulent statements.   As part of his offer in compromise to pay

$2,500 to settle the outstanding debt owed by defendant FATTAH on his 259 Strategies line of

credit from Citizens Bank, which line of credit was insured by the SBA, defendant FATTAH

completed SBA Forms 1160 and 770.   In those forms, in which he claimed he was making a "full

disclosure of my financial capacity," he falsely claimed, among other things, that he earned

approximately $2,500 monthly, that 259 Strategies had ceased operations in 2006, and that he had

an inability to earn substantial income.   In fact, FATTAH knew at the time that 259 Strategies had

not ceased operations in 2006, and knew at the time that he was earning approximately $6,250 per

month to perform strategic development and marketing services pursuant to contracts he held in

his own name and in the name of a corporate entity he controlled.

In violation of Title 18, United States Code, Section 1001(a)(3).

12

## COUNT NINE

### FALSE STATMEMENTS CONCERING A LOAN INSURED BY THE SMALL BUSINESS ADMINISTRATION
### 18 U.S.C. § 1001

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 and 4 of the Introduction are incorporated here.

2.      The United States Small Business Administration ("SBA") is an independent Federal agency that provides loans and loan guarantees to assist small businesses throughout the United States.

3.      On or about October 11, 2010, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully and knowingly made and caused to be made, and used and caused to be used, in a matter within the jurisdiction of a department or agency of the United States, that is, the SBA, a false writing or document, knowing the same to contain materially false, fictitious, and fraudulent statements.   As part of his offer in compromise to pay $10,000 to settle the outstanding debt owed by defendant FATTAH on his 259 Strategies loan from PNC Bank, which loan was insured by the SBA, FATTAH completed SBA forms 1160 and 770.   On those forms FATTAH falsely claimed, among other things, that he earned approximately $2,500 monthly and that 259 Strategies had ceased operation in 2007.   In fact, FATTAH knew at the time that he had signed at least three contracts as President of 259 Strategies, LLC, during 2010 with Company 1, and that throughout 2010 he had earned approximately $6,250 to $37,500 monthly.   FATTAH also knew at the time that, according the terms of the most recent contract he had signed, only six days earlier on

13

October 5, 2011, 259 Strategies was being paid $450,000 annually by Company 1.

In violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT TEN

### FALSE STATMEMENTS CONCERING LOANS INSURED BY THE SMALL BUSINESS ADMINISTRATION
### 18 U.S.C. § 1001

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 and 4 of the Introduction are incorporated here.

2.    The United States Small Business Administration ("SBA") is an independent Federal agency that provides loans and loan guarantees to assist small businesses throughout the United States.

3.    On or about May 20, 2011, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully and knowingly made and caused to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States, that is, the SBA.   Defendant FATTAH stated to an SBA Special Agent that, among other things, 259 Strategies had ceased operations by 2007, and that during March 2010 and October 2010 he earned approximately $2,500 monthly, as he had claimed on bank loan settlement documents previously filed with the Small Business Administration.   In fact, FATTAH knew at the time that throughout 2010 he had earned approximately $6,250 to $37,500 monthly, and that at times during 2010 he had received income as the President of 259 Strategies.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT ELEVEN

### FALSE STATEMENTS TO SETTLE A BANK LOAN
### 18 U.S.C. § 1014

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 and 4 of the Introduction are incorporated here.

2.    On or about November 8, 2005, Sun National Bank granted a $25,000 revolving unsecured line of credit to defendant CHAKA FATTAH. JR., doing business as 259 Strategies.

3.    On or about June 30, 2006, Sun National Bank filed a complaint against defendant FATTAH in the Court of Common Pleas in Philadelphia County, claiming that FATTAH had failed to make payments owed under the terms of the loan.

4.    On or about January 3, 2007, Sun National Bank filed a Praecipe for entry of Default Judgment against FATTAH for failure to file an answer to the complaint.

5.    On or about October 25, 2007, FATTAH was ordered by the Court of Common Pleas in Philadelphia County to appear for a deposition on the lawsuit.

6.    On or about May 23, 2008, FATTAH appeared for deposition at a law firm, where he was deposed under oath.

7.    On or about May 23, 2008, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly made and caused to be made to Sun National Bank false statements for the purpose of influencing the actions of Sun National Bank on the settlement and disposition of the $25,000 unsecured revolving line of credit previously granted to defendant FATTAH.   During the deposition, FATTAH claimed, among other false statements, that he was unemployed, that he did not have a checking account or a savings account, and that his American Royalty company was

16

only a concept and had not had any clients since 2007.   In fact, at the time FATTAH was a

co-holder in a savings account and a checking account at the Wright Patman Congressional

Federal Credit Union, Washington, D.C.   On or about April 23, 2008, approximately two weeks

before the deposition, FATTAH received a $9,960 wire transfer into his Wright Patman account,

which funds FATTAH knew to be for services to be undertaken by FATTAH and his American

Royalty company.

      In violation of Title 18, United States Code, Section 1014.

## COUNT TWELVE

### BANK FRAUD
### 18 U.S.C. § 1344

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 and 4 of the Introduction are incorporated here.

2.      Between on or about March 11, 2011, through on or about January 27, 2013, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly executed, and attempted to execute, and aided and abetted the execution and attempted execution of a scheme to defraud United Bank, and to obtain monies owned by and under the care, custody, and control of that bank by means of false and fraudulent pretenses, representations, and promises.   As set forth below, defendant FATTAH carried out the scheme by obtaining a $50,000 commercial loan for business purposes, and then using the funds instead to pay tens of thousands of dollars of gambling debts and other personal expenses.

### THE SCHEME

3.      On or about March 11, 2011, defendant CHAKA FATTAH, Jr. applied to United Bank for a $100,000 commercial loan in the name of 259 Strategies LLC, which he described as a management consulting firm providing educational consulting and other services.   As part of his application to United Bank, defendant FATTAH supplied a copy of a contract he signed in October 2010 as President of 259 Strategies with Company 1.   Under the terms of the contract, 259 Strategies was to be paid $450,000 annually to perform various strategic, confidential, and proprietary functions for Company 1, including managing a program, conducting training

18

programs, hiring school counselors, and implementing marketing and development plans for Company 1.

4.      Defendant CHAKA FATTAH, Jr. explained to United that the purpose of the loan was to fund a working capital line of credit from which 259 Strategies could make payments to Company 1 employees who reportedly worked under defendant FATTAH's supervision. FATTAH explained, essentially, that he needed this "gap" line of credit because 259 Strategies at times had to make payments to the employees before Company 1 made its monthly payment to 259 Strategies.

5.      On or about April 19, 2011, United Bank granted defendant CHAKA FATTAH, Jr. a $50,000 revolving commercial line of credit.   Defendant FATTAH agreed to loan terms which required him to use the loan proceeds for "working capital to support business operations."

6.      On or about April 25, 2011, United Bank approved defendant CHAKA FATTAH, Jr.'s request made that same day to withdrawal the maximum amount allowable under the loan terms: $50,000.   On or about April 25, 2011, defendant FATTAH caused the transfer of $50,000 in loan proceeds to a 259 Strategies checking account at United Bank which had been established with the line of credit.

7.      Within two days of the transfer, that is, by April 27, 2011, defendant CHAKA FATTAH, Jr. caused the transfer of more than $35,000 from the United Bank 259 Strategies checking account.   These transfers included funds to make a car payment, to pay down over $15,000 in personal credit card debt, and a $19,000 check which defendant FATTAH drew on the account and deposited to a personal checking account at Citizens Bank.   On April 28, 2011,

FATTAH wrote a $17,500 check from the Citizens Bank account to pay down gambling debts at Sugarhouse Casino.

8.      On or about May 31, 2011, after defendant CHAKA FATTAH, Jr. had repaid funds to United Bank, United Bank approved defendant FATTAH's request made that same day to withdraw $24,500 in loan proceeds.   On or about April 25, 2011, FATTAH caused the transfer of $24,500 in loan proceeds to the 259 Strategies checking account at United Bank which had been established with the line of credit.

9.      On or about May 31, 2011, defendant CHAKA FATTAH, Jr. wrote a $20,000 check from the United Bank 259 Strategies checking account which he deposited to his personal checking account at Citizens Bank.   One day later, on or about June 1, 2011, defendant FATTAH withdrew $20,000 in cash from the Citizens Bank account and used $16,000 of that cash to pay down gambling debts at Harrah's casino.   Within six days of the transfer, that is, by June 6, 2011, FATTAH transferred more than $1,500 from his Citizens account to make a car payment and to pay down personal credit card debt, and withdrew from the account approximately $1,995 in cash, approximately $400 of which was withdrawn at the Sugarhouse casino.

In violation of Title 18, United States Code, Section 1344.

## COUNT THIRTEEN

### FALSE STATEMENTS TO OBTAIN A BANK LOAN
### 18 U.S.C. § 1014

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 and 4 of the Introduction are incorporated here.

2.      On or about January 20, 2012, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

knowingly made and caused to be made to the Philadelphia Federal Credit Union false statements

for the purpose of influencing the actions of the Credit Union upon a $15,000 personal line of

credit for defendant FATTAH.   FATTAH claimed, among other things, that he had no

outstanding loans other than those listed on his credit report, when he knew that he owed in excess

of $50,000 to United Bank.   Also, in response to the Credit Union's questions concerning his

income and debts, FATTAH lied about his monthly rent and car payments to cause the Credit

Union to view his application for a line of credit more favorably.

In violation of Title 18, United States Code, Section 1014.

21

## COUNT FOURTEEN

### FILING A FALSE FEDERAL INCOME TAX RETURN
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  Paragraphs 1 and 4 of the Introduction are incorporated here.

2.  On or about December 13, 2010, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully made and subscribed a United States income tax return, Form 1040, for the calendar year 2005, which was verified by a written declaration that it was made under the penalty of perjury and filed with the Director, Internal Revenue Service Center, which defendant FATTAH did not believe to be true and correct as to every material matter, in that the return reported adjusted gross income of $196, when in fact, as FATTAH knew, he had received additional taxable income of approximately $85,312.

In violation of Title 26, United States Code, Section 7206(1).

22

## COUNT FIFTEEN

### FILING A FALSE FEDERAL INCOME TAX RETURN
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 and 4 of the Introduction are incorporated here.

2.      On or about December 15, 2010, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully made and subscribed a United States income tax return, Form 1040, for the calendar year

2006, which was verified by a written declaration that it was made under the penalty of perjury and

filed with the Director, Internal Revenue Service Center, which defendant FATTAH did not

believe to be true and correct as to every material matter, in that the return reported adjusted gross

income of $1,000, when in fact, as FATTAH knew, he had received additional taxable income of

approximately $19,000.

In violation of Title 26, United States Code, Section 7206(1).

23

## COUNT SIXTEEN

### FILING A FALSE FEDERAL INCOME TAX RETURN
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT**:

1.   Paragraphs 1 and 4 of the Introduction are incorporated here.

2.   On or about December 15, 2010, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully made and subscribed a United States income tax return, Form 1040, for the calendar year

2008, which was verified by a written declaration that it was made under the penalty of perjury and

filed with the Director, Internal Revenue Service Center, which defendant FATTAH did not

believe to be true and correct as to every material matter, in that the return reported adjusted gross

income of $3,717, when in fact, as FATTAH knew, he had received additional taxable income of

approximately $49,184.

In violation of Title 26, United States Code, Section 7206(1).

24

## COUNT SEVENTEEN

### FILING A FALSE FEDERAL INCOME TAX RETURN
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 and 4 of the Introduction are incorporated here.

2.    On or about February 15, 2010, in the Eastern District of Pennsylvania, defendant

### CHAKA FATTAH, JR.

willfully made and subscribed a United States income tax return, Form 1040, for the calendar year

2009, which was verified by a written declaration that it was made under the penalty of perjury and

filed with the Director, Internal Revenue Service Center, which defendant FATTAH did not

believe to be true and correct as to every material matter, in that the return reported adjusted gross

income of $39,519, when in fact, as FATTAH knew, he had received additional taxable income of

approximately $6,092.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT EIGHTEEN

**FAILING TO PAY FEDERAL INCOME TAX**
**26 U.S.C. § 7203**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 and 4 of the Introduction are incorporated here.

2.      On or about September 27, 2011, in the Eastern District of Pennsylvania, defendant

**CHAKA FATTAH, JR.**

a resident of Philadelphia, Pennsylvania, filed a federal income tax return for tax year 2010 which

identified his adjusted gross income as $151,808 and which identified a tax due of $51,141.

Knowing this, FATTAH willfully failed to pay the tax due to the Director of the Internal Revenue

Service Center or to any other proper officer of the United States.

In violation of Title 26, United States Code, Section 7203.

26

## COUNT NINETEEN

**THEFT FROM A PROGRAM RECEIVING FEDERAL FUNDS**
**18 U.S.C. § 666(a)(1)(A)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3 and 4 of the Introduction are incorporated here.

2.      Company 1 operated from offices at 2 Logan Square, Suite 1900, Philadelphia, PA. Company 1 contracted with school districts, including the Philadelphia School District ("PSD"), to operate schools which provided alternative education services to "at risk" and other middle and high school age students.   Person 1 was the President of Company 1.

3.      At times during 2010, 2011 and 2012, defendant CHAKA FATTAH, JR. served as the Chief Operating Officer of Company 1 pursuant to contracts he signed as President of 259 Strategies, LLC.   He also signed a contract as owner of Legal Marketing Strategies, LLC, to provide marketing and development services to a law firm associated with Company 1.   Pursuant to the contracts, Company 1 and the law firm paid defendant FATTAH's entities approximately $12,000 per month to approximately $37,500 per month.   From those payments, 259 Strategies was obligated to pay two other Company 1 employees.

4.      By an Agreement For Services executed and delivered as of July 31, 2010, and an Amendment to Agreement For Services executed and delivered as of July 31, 2011, the PSD entered into a contract for Company 1 to provide its educational services program at one of its Philadelphia school facilities during school years 2010 – 2011 and 2011 – 2012.   The school became known as Company 1 Southwest.

5.      As part of the contracting process with the School District of Philadelphia, and pursuant to the Agreement For Services and Amendment to Agreement For Services, defendant

27

CHAKA FATTAH, JR. and Person #1, on behalf of Company 1, provided budget figures to the

School District of Philadelphia for the Southwest school for fiscal years 2010 - 2011 and 2011 -

2012.  The figures contained salary, administrative and other costs which became part of the

contract between the PSD and Company 1.  The PSD required companies which provided

alternative educational services to submit budgets so the PSD could verify that the companies had

the proper administrative and teaching personnel and the practical economics in place to carry out

the contracts successfully.

6.      The Southwest budgets provided to the School District by defendant CHAKA

FATTAH. Jr. and Person 1 contained false and fictitious personnel and financial figures including,

among other things, fictitious benefits costs of $170,000 per year, inflated salary figures for the

Southwest Director, teachers, and administrative staff, and salary figures for non-existent

employees, such as a computer lab technician, a behavior specialist, and youth service assistants,

all of which concealed the theft of the funds from the School District by defendant FATTAH and

Person 1.

7.      Between approximately January 5, 2011, and June 21, 2011, the PSD, based upon

the false representations contained in the budgets for school years 2010 – 2011 and 2011 – 2012,

the PSD paid Company 1 approximately $957,868 for its services at the Southwest School, which

payments were consistent with the false budget figures provided by defendant CHAKA FATTAH,

Jr. and Person 1.

28

8.     Between in or about July 2010, through in or about June 2012, in the Eastern District of Pennsylvania and elsewhere, defendant

**CHAKA FATTAH, JR.,**

an agent of Company 1 and the PSD, organizations which received benefits of over $10,000 in any one year, under a federal program involve a grant, contract, subsidy, loan, guarantee, insurance or other form of federal assistance, knowingly embezzled, stole, obtained by fraud or otherwise knowingly converted to the use of any person other than the rightful owner, or intentionally misapplied, property that was valued at more than $5,000 and was under the care, custody, control of the Philadelphia School District and paid to Company 1 pursuant to contract.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNTS TWENTY THROUGH TWENTY-THREE

### WIRE FRAUD
### 18 U.S.C. § 1343

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 3 and 4 of the Introduction are incorporated here.

2.      Paragraphs 2 through 7 of Count Nineteen are incorporated here.

### The Scheme to Defraud

3.      Between in or about July 2010, through in or about June 2012, in the Eastern

District of Pennsylvania and elsewhere, defendant

### CHAKA FATTAH, JR.

and Person 1 devised and intended to devise a scheme to defraud the School District of

Philadelphia and Company 1, and to obtain money and property from the School District of

Philadelphia and Company 1 by means of knowingly false and fraudulent pretenses,

representations, and promises.

4.      It was the object of the scheme described in paragraph 3 for defendant CHAKA

FATTAH, Jr. and Person 1 to use the resources of the School District of Philadelphia in various

ways to enrich themselves and advance their personal business interests, including Company 1,

259 Strategies, and Legal Marketing Strategies, LLC.

### Manner and Means

5.      It was part of the scheme to defraud that defendant CHAKA FATTAH, JR. and

Person 1 engaged in the manner and means described in paragraphs 2 - 7 of Count Nineteen of this

indictment.

30

**Acts in Furtherance of the Scheme**

6.     On or about the dates set forth below, Defendant CHAKA FATTAH, JR. and

Person 1 executed and attempted to execute the scheme and artifice to defraud and to obtain money

by means of false and fraudulent pretenses, representations, and promises, by transmitting and

causing to be transmitted by means of wire in interstate commerce the following wire

communications in the form of writings, signs, signals, pictures, and sounds:

| Count | Interstate Wire Communication | Approximate Date |
|-------|-------------------------------|------------------|
| 20 | Transmission of Southwest School budget for fiscal year 2010 – 2011 | 9/27/2010 |
| 21 | Transmission of Southwest School budget for fiscal year 2011 – 2012 | 7/13/2011 |
| 22 | Transmission of $15,000 from Company 1's Operating Account at RBS Citizens Bank, N.A., Providence RI, to 259 Strategies' Account No. 8********2 at United Bank of Philadelphia | 5/26/2011 |
| 23 | Transmission of $24,650 from Company 1's Operating Account at RBS Citizens Bank, N.A., Providence RI, to 259 Strategies' Account No. 8********2 at United Bank of Philadelphia | 5/27/2011 |

All in violation of Title 18, United States Code, Sections 1343.

*A TRUE BILL:*

_____
FOREPERSON

_____
ZANE DAVID MEMEGER
United States Attorney

31