IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION
     :
     v.      :
     :
CHAKA FATTAH, JR.      :      NO. 14-409

MEMORANDUM

Bartle, J.      January 22, 2015

Before the court is the motion of defendant Chaka Fattah, Jr. ("Fattah") to dismiss the indictment, improperly styled as a motion to quash.[1]

Fattah has been charged with twenty-three counts of fraud, theft, and tax-related offenses. According to the indictment, between approximately 2005 and 2012, Fattah held himself out as the founder and owner of a number of business entities. He allegedly used those entities as a front to obtain business lines of credit that he then improperly used for personal expenses. After defaulting on several of these loans, some of which were insured by the U.S. Small Business Administration ("SBA"), the indictment charges that Fattah submitted materially false statements to that agency and others for the purpose of settling some of the debts. He is additionally charged with bank fraud, making false statements as

---

[1] We treat Fattah's motion as one for dismissal of the indictment under Rule 12 of the Federal Rules of Criminal Procedure. The adoption of Rule 12 "abolishe[d] ... motions to quash. A motion to dismiss or for other appropriate relief is substituted for the purpose of raising all defenses and objections heretofore interposed." Advisory Committee's Note.

to a personal line of credit, several tax offenses, and federal program theft and wire fraud arising out of a scheme to defraud the School District of Philadelphia while employed as a contractor operating a school for students with disciplinary issues.

Fattah now seeks to dismiss the indictment on a myriad of grounds. Specifically, he asserts that the Government submitted perjured testimony to the grand jury. He also contends that a search warrant executed in February 2012 was obtained through misrepresentations to the magistrate judge and was in any event either impermissibly general or overbroad. In addition, Fattah takes issue with several of the Government's investigatory tactics, including the manner in which he was interviewed by agents of the SBA and the Federal Bureau of Investigation ("FBI"), the review of emails between him and his attorney, and the purported violation by the Government of grand jury secrecy.

I.

We begin with Fattah's position that the indictment must be dismissed because numerous witnesses gave perjured testimony which the Government deliberately offered to the grand jury. He also contends that false representations by the Government to the court in a separate but related criminal matter are further evidence of pervasive prosecutorial misconduct in these proceedings against him.

Dismissal of an indictment is a "drastic remedy." United States v. Bansal, 663 F.3d 634, 660 (3d Cir. 2011) (quoting United States v. Morrison, 449 U.S. 361, 365 n.2 (1981)).  Ordinarily, a court may dismiss an indictment only if there is a showing that the defendant has been prejudiced by an irregularity in the grand jury proceedings.  Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988).  The indictment is subject to dismissal "only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."  Id. (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)).

However, in certain circumstances in which the error is "fundamental," no showing of prejudice is required.  Id. at 256-57.  Fundamental errors "are ones in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice."  Id. at 257.  The Supreme Court has reached such a conclusion in cases where the grand jurors were selected on the basis of race or gender. Id.  On the other hand, our Court of Appeals has held that "the presentation of ... allegedly perjured testimony to the grand jury does not fall into the narrow category of cases in which dismissal of charges without a showing of prejudice is warranted."  United States v. Soberon, 929 F.2d 935, 940 (3d Cir. 1991).

-3-

In this case, Fattah first attacks the grand jury testimony of Matthew Amato. Amato was a friend of Fattah during the relevant time period and was involved with one or more of the business entities that the defendant is alleged to have used to obtain lines of credit. According to Fattah, Amato testified to a number of misleading facts, including the level of income that Fattah-owned businesses had earned, the amount of money he and Fattah spent on various business and personal expenses, the circumstances surrounding the sale of a car, and whether a certain business entity was in existence in 2005, among many other things.

In challenging Amato's grand jury testimony, Fattah relies mainly on his own version of events. He also questions the veracity of this witness's testimony on the basis of Amato's prior statements in his personal bankruptcy proceeding and in the investigation which led to the present indictment.

Our Court of Appeals has made it clear that a motion to dismiss is not "a permissible vehicle for addressing the sufficiency of the government's evidence." United States v. Bergrin, 650 F.3d 257, 265 (3d Cir. 2011) (quoting United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000)). As the court explained, "'Evidentiary questions' -- such as credibility determinations and the weighing of proof -- 'should not be determined at th[is] stage.'" Id. (quoting United States v. Gallagher, 602 F.2d 1139, 1142 (3d Cir. 1979)) (alterations in original). The accuracy of

-4-

Amato's testimony vis-à-vis statements he may have made in the past is a question for the jury to decide at trial.  Simply because Amato's testimony was purportedly inconsistent with his prior statements does not mean that the Government suborned perjury.  Nor do these supposed inconsistencies engender any "grave doubt" that the grand jury's decision to indict was free from error.  <u>Bank of Nova Scotia</u>, 487 U.S. at 256.

Fattah next contests the grand jury testimony of a certain FBI agent.  The agent stated, among other things, that Fattah's 2004 tax return was fictitious and designed only to establish the existence of Fattah's business on paper so that he could then apply for business lines of credit.  He also repeated many of Amato's statements that Fattah believes are false.  Here again, Fattah relies principally upon his own version of the story to call into question the agent's testimony.  In the absence any reasonable basis to conclude that the agent intentionally misled the grand jury, the weight and credibility of the agent's testimony are determinations reserved for the trial jury.

Fattah challenges the testimony of other grand jury witnesses as well.  They include a former loan officer for one of the banks that allegedly lent him money and an attorney for the School District of Philadelphia.  Fattah maintains, for example, that the loan officer lied to the grand jury when he explained that a loan application document did not "reveal the existence of any

loans over $15,000 to credit cards" when it in fact reflected $15,000 in such debt.  Also included in Fattah's motion is a lengthy explication of the School District of Philadelphia's methods for overseeing its alternative education contractors, which differs in certain respects from the testimony of the school district attorney.

Fattah's position simply rests on a contrary recollection of the facts and on contrary inferences that may be drawn from the documentary evidence.  Again this is insufficient to support a conclusion that the Government suborned perjury that was prejudicial to the defendant.  Fattah has failed to establish any grave doubt in the soundness of the grand jury proceedings on the basis of perjury.[2] Bank of Nova Scotia, 487 U.S. at 256.  The motion of Fattah will be denied as it relates to perjury before the grand jury.

## II.

We next address Fattah's challenges to a search warrant executed at Fattah's home and business addresses on February 29, 2012.  According to Fattah, "[t]he search warrant affidavit contains false statements, material omissions and misleading statements" that

---

[2]  In addition to grand jury witnesses, Fattah also takes issue with a number of statements the Government made in connection with Amato's recent guilty plea in his own criminal prosecution. Once again, Fattah predominantly rests his arguments on his own version of the facts.  He has cited no authority to suggest that the Government's statements in one criminal case can, without more, serve as the basis for dismissing an indictment in another action when the statements do nothing to call into question the record before the grand jury.  Fattah's position is without merit.

amount to prosecutorial misconduct.  He also argues that the warrant was an impermissible general warrant or, in the alternative, that it was overbroad and thus in need of redaction.

According to Fattah, the search warrant affidavit failed to inform the magistrate judge of a number of key facts about the ownership and sale of the car referenced in Amato's grand jury testimony.  It allegedly did not explain, among other things, that the car had been registered in Amato's name rather than Fattah's.  The agent submitting the warrant also purportedly made false statements mischaracterizing the financial records that he had reviewed.  In the aggregate, Fattah urges that these and other missteps show that the Government made intentional, material misrepresentations to the magistrate judge that undermined the validity of the warrant.

Our Court of Appeals has explained that "a defendant may not challenge an indictment on the ground that illegally obtained evidence was presented to the grand jury."  United States v. Kenny, 462 F.2d 1205, 1213 (3d Cir.), cert. denied, 409 U.S. 914 (1972); see also 24 Moore's Federal Practice § 606.04[3] (3d ed. 2014).  Although Fattah cites Fourth Amendment cases relating to the validity of warrants in arguing that the agent's misstatements to the magistrate judge were misconduct, see, e.g., Franks v. Delaware, 438 U.S. 154, 155-56 (1978), nowhere does he move the court to suppress the evidence obtained from the execution of the warrant in

question.   Fattah's arguments with regard to the February 2012 search warrant are misplaced in this motion to dismiss the indictment.

Even if we were to interpret Fattah's motion as one to suppress evidence illegally obtained on the basis of misrepresentations made in the search warrant affidavit, his motion would still be denied.   Evidence must be suppressed when it is seized pursuant to a warrant obtained through a material falsehood made "either knowingly and intentionally or with reckless disregard for the truth." United States v. Brown, 631 F.3d 638, 641-42 (3d Cir. 2011).   Here, Fattah largely relies upon his own disagreement with various assertions made in the supporting affidavit.   Moreover, what references Fattah does make to documentary record are merely disagreements as to the inferences that are to be drawn from that evidence.   In short, there is simply no basis to conclude that the Government improperly obtained the warrant through knowing, intentional, or reckless misrepresentations to the magistrate judge.

Fattah also argues that the warrant is impermissibly general.   The Fourth Amendment requires that a warrant must "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; United States v. Christine, 687 F.2d 749, 752 (3d Cir. 1982).   A general warrant violates this requirement by giving law enforcement license to go on an unbridled search through a person's home or property. United

-8-

States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and
Fifty-Seven Cents, 307 F.3d 137, 149 (3d Cir. 2002).  Our Court of
Appeals has stated:  "Examples of general warrants are those
authorizing searches for and seizures of such vague categories of
items as 'smuggled goods,' 'obscene materials,' 'books, records,
pamphlets, cards, receipts, lists, memoranda, pictures, recordings
and other written instruments concerning the Communist Party of
Texas,' 'illegally obtained films,' and 'stolen property.'"  Id.
(quoting Christine, 687 F.3d at 753) (some quotation marks omitted).

Christine reasoned that the complexity of the crimes for
which there is probable cause informs the level of specificity
required in a search warrant:

> [T]he use of generic classifications in a
> warrant is acceptable when a more precise
> description is not feasible.... Likewise, in
> searches for papers, it is certain that some
> innocuous documents will be at least cursorily
> perused in order to determine whether they are
> among those papers to be seized.  But no tenet
> of the Fourth Amendment prohibits a search
> merely because it cannot be performed with
> surgical precision.  Nor does the Fourth
> Amendment prohibit seizure of an item, such as
> a single ledger, merely because it happens to
> contain other information not covered by the
> terms of the warrant.
>
> This flexibility is especially appropriate in
> cases involving complex schemes spanning many
> years that can be uncovered only by exacting
> scrutiny of intricate financial records.

Christine, 687 F.2d at 760 (emphasis added) (citations omitted).
The Supreme Court has likewise observed that "[t]he complexity of an

illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." Andresen v. Maryland, 427 U.S. 463, 480 n.10 (1976).

In this case, the search warrant affidavit gave a lengthy account of the crimes for which the Government sought to establish probable cause, including five years of a wide range of alleged financial improprieties. The search warrant sought authorization to seize, among other things, "[a]ll financial records" at Fattah's residence and business address, "[a]ll checks paid to employees for wages," "[a]ll records of cash payments made to entities and individuals," "[a]ll records of money and any other assets sent abroad," "any papers reflecting names, addresses ... and/or telex numbers of business associates ... and other individuals or businesses with whom a financial relationship exists," "[a]ll tax records," "[a]ll corporate and/or business bookkeeping records," "[a]ll financial statements," and "electronic equipment" used to store the information listed above.

These categories of items might initially appear to be similar to those prohibited general warrants described in Christine. However, the Government here sought a search warrant relating to suspected financial crimes running from 2005 to the date of the warrant application in February 2012. The investigation involved

-10-

allegations of false statements concerning several different lines
of credit, the mischaracterization of personal purchases as business
expenses, income tax violations that implicated "income [Fattah]
obtained from 2005 to the present," and other finance-related
misrepresentations, all thought to have been facilitated by an
intricate web of bank transfers between accounts held in the name of
Fattah's businesses and in his own name.

      This is the sort of "complex scheme[] spanning many years"
for which our Court of Appeals prescribed flexibility in <u>Christine</u>.
<u>Christine</u>, 687 F.2d at 760.  Fattah may not use the complexity of
his alleged crimes as a "shield to avoid detection."  <u>Andresen</u>, 427
U.S. at 480 n.10.  The categories of information authorized to be
searched or seized did not permit law enforcement to go on an
unrestrained search, and they were consistent with the scope of
probable cause established by the Government in the search warrant
affidavit.  We conclude that the warrant was not impermissibly
general.

      Fattah argues in the alternative that the warrant should
be redacted as overbroad.  <u>See</u> <u>Ninety-Two Thousand Four Hundred</u>
<u>Twenty-Two Dollars</u>, 307 F.3d at 149.  He claims that the warrant
"seized 7 years of documents, without any particularity or
separating documents or computer equipment necessary to operate the
business."  Even assuming that Fattah is correct that the warrant is
overbroad, he does not propose any redactions.  Nor does he identify

any specific items of evidence he seeks to exclude from admission at trial.  As a result, even if his present motion were to be considered a motion to suppress, it must be denied.

For these reasons, we conclude that the search warrant executed on February 29, 2012 was free from prosecutorial misconduct.  Nor was it a general or overly broad warrant requiring suppression.

III.

Fattah also challenges the manner in which the SBA and FBI undertook their investigations of him.  Specifically, Fattah urges that secretly recorded interviews between him and an SBA agent and later conversations involving him, officials from the School District of Philadelphia, and an undercover FBI agent were improper. According to Fattah, these investigation practices violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966), were involuntary as a matter of due process, and departed from the proper administration of justice through the improper commingling of separate investigations.  See United States v. Scrushy, 366 F. Supp. 2d 1134 (N.D. Ala. 2005).

We first address Fattah's argument that the indictment should be dismissed because the Government violated Miranda and the Fourteenth Amendment's prohibition on the use of involuntary statements.  As noted above, an indictment may not be dismissed on the ground that the Government obtained evidence illegally.  United

-12-

States v. Kenny, 462 F.2d 1205, 1213 (3d Cir.), cert. denied, 409 U.S. 914 (1972).  As such Fattah's reliance on Miranda and the Due Process Clause as it relates to involuntary statements is misplaced.

However, even if we interpret his motion as a motion to suppress on these grounds, Fattah's position that evidence was obtained through unconstitutional means is untenable.  The Supreme Court held in Miranda that the Government may not introduce statements of a person arising out of a custodial interrogation unless it takes certain steps to safeguard that person's constitutional rights.  Miranda, 384 U.S. at 444-45.  A defendant is in "custody" for Miranda purposes when a reasonable person in his or her position would feel that "he or she was not at liberty to terminate the interrogation and leave."  Thompson v. Keohane, 516 U.S. 99, 112 (1995).  In this case, Fattah makes no argument that his liberty was constrained when he met with agents of the Government.  Indeed, he presents no facts from which to conclude that a reasonable person in Fattah's shoes would have felt unable to terminate these encounters.  He has therefore failed to establish that any interrogation was custodial.  Miranda is not implicated.

He also contends that his statements to an SBA agent and to an undercover FBI agent were not voluntary.  Under the Due Process Clause of the Fourteenth Amendment, incriminating statements may not be used when they are involuntary.  Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002).  A statement is involuntary when,

-13-

under the totality of the circumstances, "the suspect's 'will was
overborne in such a way as to render his confession the product of
coercion.'" Id. (quoting Arizona v. Fulminante, 499 U.S. 279, 288
(1991)). Relevant factors include any level of police coercion, the
"length of the interrogation, its location, its continuity, the
defendant's maturity, education, physical condition, and mental
health." Id. (quoting Withrow v. Williams, 507 U.S. 680, 693
(1993)). The Government must prove voluntariness by a preponderance
of the evidence. United States v. Jacobs, 431 F.3d 99, 108 (3d Cir.
2005).

    Even assuming the truth of Fattah's description of what
occurred, it does not serve as a credible basis to conclude that his
will was overborne. In the main, Fattah takes issue with the manner
in which an undercover FBI agent deceived him by posing as an
official of the School District of Philadelphia at several meetings
at the offices of the school district.[3] However, undercover
investigations do not violate the Constitution per se. "A necessary
predicate to a finding of involuntariness is coercive police
activity." Id. Deception, without more, is not coercion. Fattah
additionally contends that school district representatives who were
also in the room with the FBI agent stated that the conversation
would be kept confidential and that they were evaluating whether to

---

[3]  He gives no argument of any kind with respect to the
voluntariness of his conversations with an SBA agent.

give Fattah a monetary reward.  There is no evidence that Fattah was reluctant to speak at these meetings or that his will was otherwise overborne by these promises.  Lam, 304 F.3d at 264.  The defendant's statements made at a school district office to an undercover FBI agent were voluntary.  Even if his motion were interpreted as one to suppress evidence, it is without merit.

Fattah also submits that the fruits of simultaneous investigations of him by the SBA, FBI, and School District of Philadelphia must be suppressed because they were "inextricably intertwined."  He relies on United States v. Scrushy, 366 F. Supp. 2d 1134 (N.D. Ala. 2005), to make this argument.  The defendant in Scrushy was to be deposed in Atlanta, Georgia by the U.S. Securities and Exchange Commission ("SEC") as part of a civil investigation into accounting irregularities at the defendant's company.  Before the deposition took place, the U.S. Attorney's office in Birmingham, Alabama received information that a billion-dollar accounting fraud was in fact taking place at the firm.  The U.S. Attorney's office prevailed upon the SEC to alter its questioning in significant ways and to change the location of the deposition from Atlanta to Birmingham for purposes of venue over any future perjury charges. During the deposition, the SEC questioner did not advise the defendant of the existence of any criminal investigation.

The district court held that this commandeering of the civil deposition in service of an undisclosed criminal investigation

-15-

was a departure from the "proper administration of criminal justice." Id. at 1137.  In doing so the court emphasized the danger to a defendant of attending an ostensibly civil deposition when the Government is secretly investigating criminal charges at the same time.  Id. at 1139.  Thus, the court agreed that there was a "special danger that the government can effectively undermine rights that would exist in a criminal investigation by concluding a de facto criminal investigation using nominally civil means." Id. at 1140 (quoting Sec. & Exch. Comm'n v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003)).  Exercising its supervisory authority over the conduct of federal agencies, the court suppressed the testimony of the SEC official who conducted the deposition.  Id. at 1137, 1140.

In the present matter, Fattah maintains that the reasoning in Scrushy requires the suppression of Fattah's conversations with an SBA agent.  In support of this argument, Fattah urges that "the SBA was not actually conducting a civil investigation into the three SBA guaranteed loans issued to Fattah... but was working with the FBI to get Fattah to make recorded statements that could be used against him at this current criminal trial."  The Government agrees that no independent SBA civil investigation existed at the time of the conversation at issue.  The reasoning in Scrushy is inapplicable to this case where there was no civil proceeding that was commandeered in furtherance of a criminal investigation.

-16-

Fattah also seeks the suppression under <u>Scrushy</u> of his interviews with an undercover FBI agent and school district representatives previously discussed above.  The conversations should be suppressed, according to Fattah, because the Government coopted a civil investigation by the School District of Philadelphia in furtherance of its own criminal investigation.  The Government responds that there was no separate inquiry by the school district which was simply cooperating with federal investigators.

Assuming the truth of Fattah's assertion that the school district had undertaken a civil investigation, we do not agree that the federal Government can be held responsible for the actions of the School District of Philadelphia, a local agency.  It was key to the reasoning in <u>Scrushy</u> that the SEC and U.S. Attorney's office are both organs of the federal Government.  <u>Scrushy</u>, 366 F. Supp. 2d at 1138-39.  As the court explained, the taking of a civil deposition could be imputed to law enforcement because the SEC official who questioned the defendant "is employed by the United States Government -- the same United States Government whose Department of Justice is prosecuting this case."  <u>Id.</u>  In the present matter the Government cannot be said to have "manipulated simultaneous criminal and civil proceedings" when it had control over only one.  Fattah's reliance on <u>Scrushy</u> is unavailing.

For these reasons, we conclude that the Government's investigation was free from the errors that Fattah has asserted.

-17-

The interviews of him by an SBA agent and FBI agent did not violate Miranda or the Due Process Clause.  Nor were they a departure from the proper administration of criminal justice as outlined in Scrushy.

IV.

We next turn to Fattah's contention that the Government improperly reviewed email communications between him and his lawyer. Seeking no particular relief with respect to this activity by the Government, he "submits that this is just another issue that shows the governments [sic] conduct in this matter" because the action "deliberately interfered with the attorney-client privilege."  We note that Fattah has identified no specific email communications that may fall under the umbrella of the attorney-client privilege. The burden is on the party seeking the protection of the privilege to establish that it exists.  In re Grand Jury, 705 F.3d 133, 160 (3d Cir. 2012).  Fattah having made no attempt to meet this burden, his position that the Government committed misconduct in its review of his email communications based on the violations of the attorney-client privilege does not carry the day.  Nor does it inject any grave doubt into the validity of the grand jury proceedings.  Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988).

V.

Finally, we still have before us Fattah's position that the Government committed misconduct by leaking information related

-18-

to the grand jury to the media.  He also maintains that a
conversation between the Assistant U.S. Attorney and an attorney for
Fattah's father inappropriately included grand jury information.
Fattah asserts that this is additional prosecutorial misconduct
warranting dismissal of the indictment.  We are also asked to hold a
show cause hearing to determine whether the Government should be
held in contempt.

Rule 6(e)(2) of the Federal Rules of Criminal Procedure
prohibits "an attorney for the government" from "disclos[ing] a
matter occurring before the grand jury."  The ordinary remedy for
such a disclosure is a finding of contempt.  Fed. R. Crim. P.
6(e)(7); see Finn v. Schiller, 72 F.3d 1182, 1189 (4th Cir. 1996).
To make a prima facie showing of a Rule 6 violation sufficient to
institute contempt proceedings, a complainant must show that
"information was knowingly disclosed about 'matters occurring before
the grand jury'" by a person subject to Rule 6(e).  Finn, 72 F.3d at
1189 n.7.

The news articles that Fattah cites in support of his
motion make no mention of an agent for the Government supplying
information that could be considered a matter "occurring before the
grand jury."  Indeed, there are only two statements by the
Government shown in the articles.  The first is from a spokeswoman
for the U.S. Attorney's Office who stated:  "we don't confirm or
deny investigations."  The second was made by an IRS spokeswoman,

who explained "only that IRS criminal investigators were at the
Residences at the Ritz-Carlton [where Fattah lived at the time] on
Wednesday on official business."  While at certain points these news
stories state, for example, that the grand jury had subpoenaed
certain records or that "sources familiar with the probe" discussed
the object of the investigation, these statements, without more, are
a thin reed on which to base a conclusion that the Government made
knowing disclosures of grand jury information.[4]  Fattah has not made
a <u>prima</u> <u>facie</u> claim of a violation of grand jury secrecy sufficient
to warrant a contempt hearing.  <u>Finn</u>, 72 F.3d at 1189 n.7.  Nor has
he made any argument that any such violation substantially
influenced the grand jury's decision to indict.  <u>Bank of Nova Scotia
v. United States</u>, 487 U.S. 250, 256 (1988).  His motion will
therefore be denied on this ground.

VI.

In sum, we conclude that the grand jury proceedings and
the Government's investigation were free from the errors Fattah
ascribes to them.  He has not come forward with any plausible basis

---

[4]  With respect to the alleged conversation between the Assistant
U.S. Attorney and an attorney for the defendant's father, Fattah
states in his brief that the U.S. Attorney "spoke of specific
charges, such as 'bank fraud' and concerns about the statute of
limitations on some charges" and stated that the charges would
"embarrass" Fattah's father.  We note that Fattah's version of
this conversation relies on hearsay that we may not consider.
Furthermore, nowhere does Fattah detail any harm that redounded
to him from this conversation.  In short, Fattah's position that
the Assistant U.S. Attorney violated Rule 6 through a purported
conversation with his father's attorney is meritless.

to conclude that the Government suborned any prejudicial perjury before the grand jury.  Furthermore, the search warrant executed on February 29, 2012 was sufficient to pass constitutional muster.  The conversations that Fattah had with agents for the Government did not violate Fattah's rights under <u>Miranda</u> or contain any involuntary statements prohibited under the Due Process Clause, nor were these conversations the result of improperly intertwined civil and criminal proceedings.  He has additionally not met his burden of proof that the attorney-client privilege applies to any email communications that the Government has reviewed as part of its investigation.   Finally, Fattah has made no colorable showing that the Government improperly disclosed any matters occurring before the grand jury.  Accordingly, the motion of Fattah will be denied.