```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| CHAKA FATTAH, JR. | : | NO. 14-409 |

MEMORANDUM

Bartle, J.                                                July 16, 2015

Defendant Chaka Fattah, Jr. ("Fattah") has been indicted on twenty-three counts of fraud, theft, and tax-related offenses. In his instant motion Fattah seeks to dismiss the superseding indictment under the Grand Jury Clause of the Fifth Amendment to the United States Constitution which states:  "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."  U.S. Const. amend. V. He maintains that since the clause was violated he may not be tried.[1]

Fattah argues that the Government violated the Grand Jury Clause because it sought and obtained the grand jury's permission to substitute, after the superseding indictment was returned and before it was filed, pages of the superseding indictment to correct clerical errors in Counts Four and Five.  He seems to assert that

---

[1]  We note that the deadline for Fattah to submit pretrial motions related to the grand jury testimony underlying the superseding indictment was June 17, 2015, yet he filed the instant motion on June 24, 2015.  Despite this untimeliness, we reach the merits.

the grand jury cannot give such permission to make post-return amendments or corrections to an indictment.

Before the grand jury, the Government presented the common factual basis for Counts Four and Five and then proceeded to read each count out loud. As it was recited to the grand jury, Count Four stated:

> Count Four:  Paragraphs 1 and 4 of the Introduction are incorporated here.  On or about <u>November 7, 2005</u>, in the Eastern District of Pennsylvania, defendant Chaka Fattah, Jr. knowingly made and caused to be made to Bank of America false statements for the purpose of influencing the actions of Bank of America upon a $10,000 business line of credit for defendant Fattah, doing business as 259 Strategies, which he claimed offered management consulting services.  Defendant Fattah claimed, among other things, that 259 strategies had $140,000 in gross annual sales, that it had zero business debt, and that he would use the proceeds of the line of credit for working capital for his business.  In fact, Fattah knew that 259 Strategies did not have annual sales of $140,000, Fattah knew that 259 Strategies had tens of thousands of dollars in business debt, and Fattah knew that he would not use the proceeds of the line of credit for business related purposes, as required by the terms of the loan, but instead would use the proceeds primarily to pay for personal expenses.

(emphasis added).  After this reading, a grand juror questioned the date of November 7, remarking that it contradicted other materials that had been submitted for consideration.  The Assistant United States Attorney agreed that November 16, 2005 was actually the correct date and stated:  "[w]ith your permission what we will do

-2-

is, we'll change the typed document for Count Four to read the correct date and then we'll substitute that page in before we take it over to the courthouse."  The grand jury assented.

The Government then moved on to read Count Five.  As it was presented to the grand jury, Count Five charged:

> On or about July 12, 2005, in this district, defendant Chaka Fattah, Jr. knowingly induced and procured [M.A.] to make and caused [sic] to be made to PNC Bank false statements for the purpose of influencing the actions of PNC Bank upon a $15,000 revolving line of credit to M.A., doing business as Chaka Fattah, Jr. & Associates, ("CFJA").  [M.A.] claimed, among other things, that he was the owner and Chief Executive Officer of CFJA, that CFJA had $139,000 in sales, and that he would use the proceeds of the line of credit for working capital for his business.  In fact, defendant Fattah knew that CFJA was not an existing business entity and M.A. was not the owner and Chief Executive Office [sic].  Fattah knew that CFJA had not had sales of $139,000, and Fattah knew that the proceeds of the line of credit would not be used for working capital for the business, as required under the terms of the loan, but instead would be used primarily to pay for personal expenses.  In violation of Title 18, United States Code, Section[s] 1014 and 2.

After reading Count Five, the Assistant United States Attorney then stated that he saw "additional words in here that we will correct also, with the Grand Jury's permission."  There is no notation in the record that the grand jury gave its permission to correct any "additional words."  The Government then went on to present the remainder of the proposed superseding indictment to the grand jury.

The superseding indictment, signed by the grand jury foreperson, was filed on March 3, 2015.  As it appears in that document, Count Four reads:

> 1.   Paragraphs 1 and 4 of the Introduction are incorporated here.
> 2.   On or about <u>November 16, 2005</u>, in the Eastern District of Pennsylvania, defendant **CHAKA FATTAH, JR.** knowingly made and caused to be made to Bank of America false statements for the purpose of influencing the actions of Bank of America upon a $10,000 business line of credit for defendant FATTAH, doing business as 259 Strategies, which he claimed offered management consulting services.  Defendant FATTAH claimed, among other things, that 259 strategies had $140,000 in gross annual sales, that it had zero business debt, and that he would use the proceeds of the line of credit for working capital for his business.  In fact, FATTAH knew that 259 Strategies did not have annual sales of $140,000, FATTAH knew that 259 Strategies had tens of thousands of dollars in business debt, and FATTAH knew that he would not use the proceeds of the line of credit for business related purposes, as required by the terms of the loan, but instead would use the proceeds primarily to pay for personal expenses.
>        In violation of Title 18, United States Code, Section 1014.

(emphasis added).  Other than the change in date approved by the grand jury, the factual assertions of this version of Count Four are identical to those in the version of Count Four originally recited to the grand jury.

The filed version of Count Five reads:

> 1.   Paragraphs 1, 2, and 4 of the Introduction are incorporated here.

-4-

> 2. On or about July 12, 2005, in the Eastern District of Pennsylvania, defendant **CHAKA FATTAH, JR.** knowingly induced and procured M.A. to make and caused [sic] to be made to PNC Bank false statements for the purpose of influencing the actions of PNC Bank upon a $15,000 revolving line of credit to M.A., doing business as Chaka Fattah, Jr. Associates, ("CFJA").  M.A. claimed, among other things, that he was the owner and Chief Executive Officer of CFJA, that CFJA had $139,000 in sales, and that, and that [sic] he would use the proceeds of the line of credit for working capital for his business. In fact, defendant FATTAH knew that CFJA was not an existing business entity and M.A. was not the owner and Chief Executive Officer, FATTAH knew that that [sic] CFJA had not had sales of $139,000, and FATTAH knew that the proceeds of the line of credit would not be used for working capital for the business, as required under the terms of the loan, but instead would be used primarily to pay for personal expenses.
>
> In violation of Title 18, United States Code, Sections 1014 and 2.

It appears from the typographical errors noted above that the "additional words" which caught the eye of the Assistant United States Attorney in the grand jury proceedings were never removed. Thus, there is nothing to suggest that there were any changes to Count Five between the time it was read to and approved by the grand jury and its filing with the court.

The date change in Count Four is the only alteration in the factual assertions in Counts Four and Five that occurred between the initial reading of the superseding indictment and its filing. The grand jury gave its express permission for the Government to

make that revision.  Nonetheless, Fattah seems to argue that the Assistant United States Attorney's statements before the grand jury are evidence that the Government on its own improperly altered the superseding indictment after the grand jury returned it.  He urges that the indictment thus violates the Grand Jury Clause.

Fattah's argument has no basis in fact.  We agree that a defendant may not be "tried on charges that are not made in the indictment against him."  Stirone v. United States, 361 U.S. 212, 217 (1960) (citing Ex parte Bain, 121 U.S. 1 (1887)).  Once an indictment has been returned, the court may not amend it on the request of the prosecution without resubmitting it to the grand jury for its approval.  Ex parte Bain, 121 U.S. at 5-6, 13.  In this matter, however, the grand jury specifically approved the amendment, that is the change in date, contained in Count Four of the superseding indictment.  The charges against Fattah were all presented and approved by the grand jury and are set forth in the superseding indictment.  Fattah's position is not only without merit but contrary to the Supreme Court's analysis in Bain.

Accordingly, the motion of Fattah to dismiss the superseding indictment will be denied.