March 20, 2026

The Honorable Harvey Bartle, III
United States District Court Judge
16614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

<u>LETTER MOTION TO QUASH WRIT OF
GARNISHMENT AND SCHEDULE HEARING</u>

Respectfully, the United States has acted overzealously, in bad faith, and contrary to law in an ordinary payment dispute about the amount of the monthly payment related to the restitution in this case.

For the reasons described below, the writ of garnishment should be quashed and Mr. Fattah requests a hearing at the earliest available date:

1. **Any money paid by the Garnishee is Not Earnings Under 28 U.S.C. § 3205.** The United States is incorrect when they stated that "the garnishee currently is in possession, custody, or control of substantial nonexempt property belonging to or due to the defendant, namely, non-exempt disposable earnings, wages, and salary." Doc. No. 342 at 11.

2. Mr. Fattah has no wages, salary, or non-exempt disposable earnings due from the garnishee. The first part can be dealt with swiftly. Mr. Fattah is not an employee of the garnishee (…Communications). This Court can determine without a hearing **that Mr. Fattah does not receive wages or salary from the garnishee.**

3. As the United States is aware, Mr. Fattah's business serves as an independent contractor to the garnishee. One of the primary differences in being an independent contractor, is that Mr. Fattah runs his own business, while employees receive wages or salary. Every employee that receives wages or salary from a business in Philadelphia (or elsewhere) has various deductions for Federal Income Tax, F.I.C.A. Tax, State Income Tax, and City/Local Income Tax. The United States is aware, and the answer from the garnishee clearly reflects that no deductions are taken from any money paid to Mr. Fattah.

4. Therefore, there is no dispute whatsoever that Mr. Fattah is not an employee of the garnishee and does not receive wages or salary from the garnishee (…Communications).

5. In the form provided by the United States for the garnishee's answer it says in footnote #1 that "Earnings" means compensation paid or payable for personal services. However, any money paid to Mr. Fattah's business is a service fee for consulting services. Earnings is just another way to characterize payments similar to wages and salary in the statute, such as commission or retirement benefits. All of the types of payments listed are those applicable to employees.

6. Rather than earnings for personal services, the money paid by the garnishee is a business payment for consulting services provided to the garnishee.

7. The money paid by the garnishee is not personal income to Mr. Fattah, rather it is a payment to Mr. Fattah's business which is then subject to deductions for any business expense prior to treatment as income by Mr. Fattah.

8. Said differently, the money paid to Mr. Fattah's business is sales revenue or business income, not personal income. Sales revenue is then deducted by legitimate business expenses before any income becomes personal income to Mr. Fattah.

9. There is no difference between a business serving as an independent contractor and being characterized as being self-employed.

10. **The United States should have sought an installment payment order under 28 U.S.C. § 3204(1)** (If it is shown that the "judgment debtor is receiving or will receive substantial nonexempt disposable earnings from self employment that are not subject to garnishment…then upon motion of the United States and notice to the judgment debtor, the court may, if appropriate, order that the judgment debtor make specified installment payments to the United States…In fixing the amount of the payments, the court shall take into consideration after a hearing, the income, resources, and reasonable requirements of the judgment debtor and the judgment debtor's dependents…") (emphasis added).

11. Among other reasons, the communications from the United States to Mr. Fattah on October 17, 2025, January 9, 2025, and March 11, 2025 make clear this is a dispute about the amount of the monthly payment that Mr. Fattah pays towards the restitution balance. *See* March 11, 2025 Letter ("After considering your request to lower the monthly payment amount, the government has determined that you have the ability to pay $350 per month as ordered by the Court.").

12. 28 U.S.C. § 3204(1) recognizes that there can be "earnings from self employment that are not subject to garnishment," and Mr. Fattah's

submits that is exactly the structure of the payments at issue here from the garnishee.

13. The United States is aware that it cannot stop the garnishee from ending the contract for consulting services at issue here by way of reference to 15 U.S.C. § 1674, although they reference it in their motion with this Court and in documents to the garnishee. That is just another example of the United States referencing wages, salary, or employee in the Court filings on this issue.

14. 15 U.S.C. § 1674 is labeled "Restriction on discharge from employment by reason of garnishment" and further states under subsection (a) "Termination of Employment" that "No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." (emphasis added).

15. That language does not protect Mr. Fattah's contract in this instance, because the garnishee is not his "employer" and he is not an "employee."

16. This is yet another reason why garnishment is inappropriate in this matter, because the garnishee and any other client of Mr. Fattah's business could simply choose to stop doing business with him rather than doing a garnishment of any sort.

17. And of course, if Mr. Fattah lost his income, the United States would receive no payment of any kind until some speculative point in the future when he gained other clients. Mr. Fattah would also miss payments on everything else, including food, rent, transportation, and otherwise. This is why it is inappropriate for the United States to seek garnishment.

18. Mr. Fattah also points out that if he had ten (10) clients for his business, the Court would have to hold a hearing for each instance of garnishment sought by the United States in that event, rather than one hearing to adjust the installment payment order under 28 U.S.C. § 3204(1). The same is true if Mr. Fattah had 100 clients.

19. It also would be inequitable to enter garnishment for each of Mr. Fattah's clients in that scenario, where they each may incur substantial legal fees and simply decide not to do business with Mr. Fattah to avoid receiving under oath requests from the U.S. Attorney's Office.

20. Under 28 U.S.C. § 3204(1) and 18 U.S.C. § 3613 (a)(2) this Court would have to consider Mr. Fattah's financial resources. 18 U.S.C. § 3613 (a)(2) requires that "In determining what action to take, the court shall consider the defendant's employment status, earning ability, financial resources, the willfulness in failing to comply with the fine or restitution order, and any other circumstances that may have a bearing on the defendant's ability or failure to comply with the order of a fine or restitution."

21. This Court has not had any opportunity to consider Mr. Fattah's financial resources. Mr. Fattah submitted a financial form to the United States showing $5750 in business earnings and $5650 in monthly expenses. Mr. Fattah's financial disclosure form also makes clear he has a toddler son and pays the rent in full and utilities in full, among other expenses at his apartment. The United States has not made clear whether they want Mr. Fattah to stop paying his rent, his electric, his phone bill, his credit cards, business, or food expenses in order to pay the higher amount. Of course, not paying the rent would violate his lease and not paying his credit cards would violate the terms of those agreements. The United States's email on March 11th does not make clear how they determined the $350 payment amount, nor did they ever make that clear prior to Mr. Fattah voluntarily agreeing to pay it several years ago.

22. Mr. Fattah has a right to run any lawful business free from government interference, and that right is even more important considering the outstanding restitution balance. If the United States is able to serve process on any client Mr. Fattah's business obtains in the future, that would only serve to limit his contract opportunities and therefore potentially lower the financial resources to pay off the restitution balance.

23. Since the United States knows Mr. Fattah is not an employee of the garnishee and he is not protected by 15 U.S.C. § 1674 because he is not an employee, the United States acted recklessly by seeking a writ of garnishment in the first place. Many businesses, if not most businesses, would not voluntarily subject themselves to legal process for a debt that is not theirs, rather than do business with Mr. Fattah.

24. Mr. Fattah also noted that due process requires notice and an opportunity to be heard prior to the deprivation of any property or money due to him. However, the United States's action in this case did not comport with that requirement. Based on the United States actions, $687 is currently being withheld from a payment made to Mr. Fattah, and if this legal matter is not concluded in the next 2 weeks, that would simply add more funds to those withheld from Mr. Fattah.

The timeline prior to the filing of the Motion for Writ of Garnishment is as follows:

1. At the time of the $350 monthly agreement, U.S. Probation had determined one month beforehand that $250 a month was an appropriate amount in their view and Mr. Fattah had voluntarily agreed to pay that amount. The United States is not acting in good faith as it relates to the monthly payment issue and filing the writ of garnishment request.

2. On October 16, 2025, in an email to AUSA Lauren Baer, Mr. Fattah asked "if there can be an agreement to lower the payment for $100 a month for the next 18 months," as he "can no longer pay $350 a month." See Exhibit A.

3. The next day, on October 17, 2025, the United States said that "In order to evaluate your reduction in monthly payment request" they wanted a financial disclosure form completed and signed, among other things. Four days later, on October 21, 2025, Mr. Fattah sent the financial disclosure form via email.

4. For nearly eighty (80) days, Mr. Fattah heard nothing from the United States regarding this request to lower the monthly payment. On January 9, 2026, the United States said the financial disclosure form from eighty (80) days earlier was "not accepted" unless a specific page was signed. This is an example of the bad faith of the United States on this issue.

5. The same day, on January 9, 2026, Mr. Fattah sent the United States the same form with the signed portion as requested.

6. Mr. Fattah never heard back from the United States about his request, until an email *after* the filing of the ex parte motion for writ of garnishment. Mr. Fattah received an email on March 11, 2026 saying "the government reviewed the financial form that you sent to this office…After considering your request to lower the monthly payment amount, the government has determined that you have the ability to continue to pay $350 a month…"

For the reasons stated above, this Court should enter an order as soon as possible vacating the writ of garnishment pending a response by the Government to this motion and a hearing. Mr. Fattah respectfully requests that the order state clearly that the garnishee does not have to hold any payment pending further order of the Court.

This Court can determine that the appropriate remedy for the United States is an installment payment order under 28 U.S.C. § 3204(1)  for an amount to be determined after a review of the financial resources of Mr. Fattah. Mr. Fattah submits that the appropriate payment is not more than $100 a month. The writ of garnishment was improperly sought by the United States. Mr. Fattah can establish his expenses that show $5650 a month in expenses as described above, including at least $2500 in rent and other costs. Mr. Fattah is the primary working member of his household, which includes the care of his toddler son, which this Court can consider under 18 U.S.C. § 3613 (a)(2).

Mr. Fattah submits that if the writ of garnishment was filed inappropriately as he is not an employee, the United States had no legal authority to contact the garnishee. The United States knows or should have known that this action could have adverse consequences to Mr. Fattah and his ability to pay restitution at all.

Respectfully submitted,

/s/ Chaka Fattah, Jr.

Chaka Fattah, Jr.
PRO SE
(215) 301-8125

## CERTIFICATE OF SERVICE

I, Chaka Fattah, Jr., certify that a copy of this motion was served on AUSA Lauren Baer via ECF, and counsel for the garnishee via email.


Respectfully submitted,


/s/ Chaka Fattah, Jr.

Chaka Fattah, Jr.
PRO SE
(215) 301-8125